IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Billy McDowell,<br><br>    Plaintiff,<br><br>v.<br><br>Nucor Building System,<br><br>    Defendant.<br>_____ | C/A No. 3:10-172-MBS-PJG<br><br><br><br>**REPORT AND RECOMMENDATION** |

  The plaintiff, Billy McDowell ("McDowell"), filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., against his former employer, Nucor Building System ("Nucor"), asserting claims of race discrimination, hostile work environment, and retaliation.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 52.) McDowell filed a response in opposition along with additional attachments (ECF Nos. 55 & 56) and the defendant filed a reply (ECF No. 57). Having reviewed the parties' submissions and the applicable law, the court finds that Nucor's motion should be granted as to all of McDowell's claims.

---

[1] Although McDowell's filings reference gender and age discrimination, these claims are insufficiently pleaded. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009). Moreover, McDowell has not presented any argument or evidence in opposition to Nucor's motion for summary judgment on these claims, to the extent they are even asserted.

Page 1 of 18



## BACKGROUND[2]

McDowell, an African-American male, worked as a welder for Nucor from 2005 to 2008. Over the course of his employment, McDowell received warnings or was counseled about his work performance on numerous occasions. Many of those addressed the quality of McDowell's welds. Approximately two months prior to his termination, he received an overall performance review rating of "M," signifying that he was meeting expectations in all or most areas. That review also shows, however, that he received an "I" with regard to his performance and achievements, denoting that he needed improvement in some important areas. (Def.'s Mem. Supp. Summ. J., Ex. D, ECF No. 52-5 at 18-20.) On July 11, 2008, approximately one month after this performance review, McDowell was given a "zero tolerance" warning regarding his weld quality. He was advised that future weld quality problems would result in termination. On August 13, 2008, Nucor terminated McDowell for the stated reason that his weld quality continued to be deficient. Nucor has not replaced McDowell.

According to McDowell, at Nucor the welders were predominately African American. Toward the end of 2007, McDowell noticed that his supervisor, John Hutto, began finding fault with the welders' work. McDowell asserts that Hutto encouraged only white welders to become fitters, a different position on the assembly line.[3] He further asserts that Hutto treated black employees, who were mostly welders, different than white employees. In support of this statement, McDowell argues

---

[2] The facts set forth below are either undisputed or viewed in the light most favorable to the non-moving party to the extent they are supported by the record.

[3] Although McDowell implies otherwise in his brief, the only evidence in the record is that the fitter position is not considered a promotion above welder. (See Hutto Dep. 35:6-9; ECF No. 56-2 at 11.)



that Kevin O'Neal, who is white, had a similar disciplinary history as McDowell yet was not terminated.

Additionally, on one occasion Hutto showed McDowell a photograph on his computer of a man dressed as a woman with long hair, wearing a bikini, and holding a bottle of wine.[4] Hutto asked McDowell "what would [he] do with something like that?" (McDowell Dep. 2:5-12; ECF No. 52-9 at 3.) According to McDowell, when McDowell made it clear that he was offended by Hutto's actions, Hutto began to retaliate against him by threatening termination based on McDowell's absences, by attributing poor welds to McDowell that were not definitively McDowell's, and by assigning McDowell to do tasks that were more difficult. McDowell contends that Hutto told him that it was only a matter of time before Hutto would "get rid of" McDowell, and that Hutto told McDowell that he had too many absences when in fact he did not.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged

---

[4] McDowell characterizes this photograph as a "homosexual picture" and suggests in his brief that Hutto showed him "homosexual pictures" on numerous occasions. The record shows, however, that when asked about the alleged homosexual pictures in his deposition, McDowell identified as to incidents in which he was directly involved only the occasion described above.



factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence.  When direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework.  Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see



also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s]



some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    McDowell's Claims**[5]

Although McDowell attempts to shoehorn his allegations of discrimination into claims of disparate impact and disparate discipline, the facts do not support these theories.[6] Rather, the court agrees with the defendant's characterization of McDowell's discrimination claims as discussed below.

---

[5] The South Carolina Supreme Court has stated that "[t]he South Carolina Human Affairs Law essentially follows the substantive structure of Title VII" and that "Title VII cases which interpret provisions or procedures essentially identical to those of the Human Affairs Law are certainly persuasive if not controlling in construing the Human Affairs Law." Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C. 1982); see also Whitten v. Fred's, Inc., 601 F.3d 231, 242 (4th Cir. 2010). Accordingly, for the reasons that follow, the defendant is similarly entitled to summary judgment on McDowell's claims under the South Carolina Human Affairs Law.

[6] Cf. Ricci v. DeStefano, 129 S. Ct. 2658, 2673 (2009) (discussing requirements to establish a disparate impact claim); Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008) (discussing the requirements to establish a disparate discipline claim).



    **1.**    **Disparate Treatment Under Title VII**

To obtain relief for alleged race discrimination under Title VII based on an alleged discriminatory discharge, a plaintiff must first demonstrate that: (1) he is a member of the protected class; (2) his employment was terminated; (3) at the time of his termination, he was performing at a level that met the employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified individual outside the protected class. See Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)); see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). To the extent that McDowell's claim of disparate treatment rests on an alleged failure to promote, he must show: (1) he is a member of a protected class; (2) he applied for the position at issue; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005); Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 544-45 (4th Cir. 2003); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995).

McDowell cannot meet either test. Regarding his discharge, he cannot show that at the time of his termination he was meeting Nucor's expectations.[7] Rather, the record unequivocally shows that he had been disciplined or counseled multiple times regarding his weld quality, that he received

---

[7] Because Nucor's stated reason for terminating McDowell was poor work performance—*i.e.*, that he was not meeting its legitimate expectations—the evidence as to these issues overlaps; therefore, the court addresses the *prima facie* elements and the pretext prong of the McDonnell-Douglas framework together. See Warch, 435 F.3d at 516 (noting the flexibility of the McDonnell-Douglas framework and finding "no impermeable barrier that prevents the employer's use of such evidence [of an employee's unsatisfactory work performance] at different stages of the McDonnell Douglas framework").



a final warning informing him that he would be terminated for any future unsatisfactory welds, and that his supervisor perceived that he subsequently performed poor welds.  McDowell's arguments in support of his position that he was meeting expectations are unavailing.  First, he relies on his most recent performance evaluation on June 15, 2008 that rated him overall as meeting expectations in most areas.  He utterly disregards, however, the assessment that his weld quality had issues and his productivity needed improvement.  (ECF No. 52-5 at 18-19.)  Moreover, the relevant time for determining whether an employee is meeting the employer's legitimate expectations is at the time of termination.  See, e.g., O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 547 (4th Cir. 1995) (stating that a positive review in January was irrelevant to the determination of whether the employee was performing adequately when terminated in August), rev'd on other grounds, 517 U.S. 308 (1996) (ADEA); Anderson v. Stauffer Chem. Co., 965 F.2d 397, 401 (7th Cir. 1992) (stating that positive evaluation five months before termination was not determinative of the question of whether the employee was meeting expectations at the time of discharge).

Second, McDowell denies that he was responsible for all of the inferior welds for which he was blamed.  However, it is well settled that in determining satisfactory job performance, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.  King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)).  An employer's expectations of its employees are "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy

the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. In fact, the law recognizes that the employer need not even be correct regarding its assessment of the plaintiff's work performance, as long as the assessment is genuinely believed. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)); Tate v. Dravo Corp., 623 F. Supp. 1090, 1105 (W.D.N.C. 1985) ("The factfinder need not judge the correctness of the employer's assessment of the employee's abilities; it need only determine that the employer in good faith believed that the employee's performance was unsatisfactory and that the asserted reason for the decision was not a mere pretext for discrimination.").

Finally, although McDowell attempts to prove discrimination by asserting that Kevin O'Neal—a white welder with similar performance problems—was not terminated, the record does not support his contention.[8] (See Pl.'s Reply to Summ. J., ECF No. 57 at 4-5; see generally O'Neal Personnel Records, ECF No. 56-7 (showing multiple disciplinary actions for interpersonal issues, but only one warning for weld quality)). Moreover, Nucor has introduced unrefuted evidence that

---

[8] To the extent McDowell's theory of the case rests upon disparate discipline, he would have to show: "(1) that [he] engaged in prohibited conduct *similar* to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against [him] were more severe than those enforced against the other person." Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008) (emphasis added); see also Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (defining "similarly situated" in the context of Title VII and ADEA comparators).



three white employees with repeated work performance issues were all terminated. (Wilber Aff. ¶ 21, ECF No. 52-3 at 5.) Similarly, McDowell's unsupported contention that a white employee assumed his duties is belied by the evidence presented by Nucor in support of its motion. (Wilber Aff. ¶ 20, ECF No. 52-3 at 5.) Finally, McDowell does not dispute the evidence presented by Nucor that Hutto made the initial decision to hire McDowell. In a Title VII case, when the hirer and the alleged discriminator are the same person, a strong inference exists that discrimination was not a determining factor for the adverse employment action. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (stating that where the decision maker is "the same person who hired [the plaintiff], there is a 'powerful inference' that the failure to promote her was not motivated by discriminatory animus") (quoting Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991)). Although this inference can be rebutted, see Proud, 945 F.2d at 798, the evidence offered by McDowell is insufficient to countervail this "powerful" inference and allow a reasonable jury to find that unlawful discrimination was a motivating factor in the decision to terminate McDowell. Accordingly, the record does not support McDowell's claim of unlawful discriminatory treatment in violation of Title VII.

  McDowell's failure to promote claim fails for similar reasons. First, the record does not support a finding that McDowell actually applied for any promotion. (McDowell Dep. 182:11-19, ECF No. 52-9 at 29.) Further, he cannot show that he was qualified for a promotion, as he admits that he did not have the necessary welding certifications. (McDowell Dep. 204:5-8; ECF No. 52-9 at 34; see Wilber Aff. ¶¶ 7-9, 12-13, 16-18, ECF No. 52-3 at 3-5.) McDowell's unsupported assertion that Hutto encouraged white welders to apply for fitter positions and did not assist black welders in advancing is insufficient to establish a claim based upon a failure to promote.



    **2.    Hostile Work Environment Based on Race or Gender**

Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks & citations omitted) (Title VII). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Shirer v. Tri-County Elec. Co-op., Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, at *8 (D.S.C. Sept. 9, 2009) (Title VII & ADEA).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Baqir, 434 F.3d at 745-46.

To meet the second element, a plaintiff must show that "but for" one of these protected traits, he would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA). The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic. See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir.



2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer, 2009 WL 2900767, at *8.

Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

Here, McDowell cannot show that any alleged harassment was (1) based upon a protected characteristic; or (2) sufficiently severe and pervasive so as to create an abusive working environment. In his deposition, McDowell identified several instances that he considered to be harassment based on his race. With regard to Hutto, his alleged harasser, McDowell asserts in support of his hostile work environment claim that Hutto would treat white employees better than black ones. For example, he would allow white employees to "stay up front" while sending McDowell to "pull scrap"; he would permit white employees to stand around and talk while making black employees stay busy; he stated that the "welders couldn't think for themselves"; he told



McDowell that his job was on the line and pointed out mistakes; and he told a joke referencing "a little black guy." (McDowell Dep. 88:13-90:4, 92:17-93:4, 96:13-97:4, 207:14-210:12; ECF No. 52-9 at 16-17, 18-19, 20-21, 35-38.) As an initial matter, the court observes that many of the alleged incidents, taken as true, may indicate disparate treatment of African Americans generally[9] but do not as a matter of law support a hostile work environment claim. See Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004); see also Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753-54 (4th Cir. 1996) (upholding an entry of summary judgment in part because the plaintiff relied on incidents "often not directed specifically at him," such as those occurring in "group settings"). Moreover, the incidents that could arguably be considered to support a hostile work environment claim are insufficient as a matter of law to establish that any alleged harassment was severe and pervasive, as they are sporadic and isolated, and, in any event, do not appear to be overtly offensive based on race. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted); compare E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as b* * *hes and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices

---

[9] For the reasons stated above, however, McDowell's claim of disparate treatment based on race nevertheless fails.



which they had hanging by nooses tied around the dolls' necks") and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment) and Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment) and Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf' " on an almost daily basis) with McNeal v. Montgomery Cnty., Md., 307 F. App'x 766, 776 (4th Cir. 2009) (stating that "five accusations of theft and [the supervisor's] requirement that [the plaintiff] bring in doctor's notes and provide for more detail about his sick leave hardly rise to the level of 'hostile or abusive' treatment") and Hopkins, 77 F.3d 745 (acknowledging that the conduct and sexual comments at issue were "inappropriately forward," but finding the alleged harassment was insufficiently severe or pervasive where the conduct occurred over several years, most sexual comments and conduct occurred in group settings, and the supervisor never "made an overt sexual proposition or touched [the plaintiff] in a sexual manner"). The incidents identified by McDowell are insufficient to show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that were sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment. See Harris, 510 U.S. at 23.

McDowell's gender-based hostile work environment similarly falls flat. In Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998), the United States Supreme Court addressed



claims of same-sex gender harassment. The Court identified three situations that may support a same-sex claim of harassment based on gender: (1) the plaintiff presents credible evidence that the alleged harasser is homosexual and made "explicit or implicit proposals of sexual activity"; (2) the plaintiff shows that the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; or (3) the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." Id. at 80-81. Interpreting Oncale, the United States Court of Appeals for the Fourth Circuit has concluded that a plaintiff in such a case faces a "formidable obstacle" in establishing causation. Lack v. Walmart Stores, Inc., 240 F.3d 255, 260 (4th Cir. 2001) (applying federal law interpreting Title VII to a claim under the West Virginia Human Rights Act). Conduct that is "merely tinged with offensive sexual connotations" is not sufficient; rather, a plaintiff must show discrimination *because of* his sex. Oncale, 523 U.S. at 81.

Here, McDowell appears to rely on the first scenario identified in Oncale. However, no evidence in the record supports McDowell's theory that Hutto is homosexual;[10] moreover, McDowell has identified no implicit or explicit proposals of sexual activity. Rather, McDowell's claim rests on his assertions that Hutto did not have a firm handshake, made facial expressions at McDowell that apparently made McDowell uncomfortable, and banged on the door of the restroom when McDowell was there because Hutto thought McDowell was using his restroom break to take a nap. (McDowell Dep. 234:2-21, 227:9-24, 32:24-34:4; ECF No. 52-9 at 51, 49, 3-5.) Such allegations are insufficient as a matter of law to establish a claim of same-sex harassment.

---

[10] The court observes that McDowell provides no evidentiary support—much less credible evidence as Oncale requires—for his conclusory assertion that Hutto is homosexual.



### 3. Retaliation

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In a typical retaliation case, a plaintiff must show that: "(1) []he engaged in a protected activity; (2) the employer acted adversely against [him]; and (3) there was a causal connection between the protected activity and the asserted adverse action." Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). To satisfy the second element, a plaintiff must show that a reasonable employee would have found the challenged action "materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted).

McDowell's retaliation claim fails because the record indisputably shows that he did not engage in any protected activity within the meaning of Title VII. McDowell does not contest that he never made a report of discrimination, harassment, or retaliation until after he was terminated. Nor does he contend that he opposed any unlawful activity, since he admits that he never expressed to Hutto that he disagreed with his actions. (McDowell Dep. 263:25-264:24; ECF No. 52-9 at 59-60.) Although McDowell asserts that he was "retaliated" against for refusing to participate in Hutto's alleged sexual advances, this contention is merely an unsuccessful attempt to characterize alleged continued harassment as a Title VII retaliation claim rather than a hostile work environment claim. Consequently, McDowell's retaliation claim fails as a matter of law.



## RECOMMENDATION

For all of the foregoing reasons, McDowell's claims fail as a matter of law. Accordingly, the court recommends that the defendant's motion for summary judgment (ECF No. 52) be granted in its entirety.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 15, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).