IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Billy McDowell, ) | |
| ) | C/A No. 3:10-172-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| Nucor Building System, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Billy McDowell is a former employee of Defendant Nucor Building System ("Nucor"). Plaintiff filed an amended complaint on June 22, 2010, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the South Carolina Human Affairs Law, S.C. Code Ann. §§ 1-13-20 & 1-13-80(a)(1) (the "Human Affairs Law"). ECF No. 29 at 1. Plaintiff, who is black, alleges that he has been subjected to race discrimination, a hostile work environment, and retaliation in violation of Title VII.[1] *Id.* at 3-4. Plaintiff also alleges that employment opportunities were denied because of his race and in retaliation for his refusal to engage in homosexual activity, in violation of the Human Affairs Law. *Id.* Specifically, Plaintiff alleges that he "has been subjected to . . . verbal abuse, racial slurs, and harassing behavior" and that he has "not [been] given the same employment transfer and/or advancement opportunities as white employees." ECF No. 29 at 2. Plaintiff further

---

[1] As explained in the Report and Recommendation, although Plaintiff has referred to sex and age discrimination in some filings, these claims are insufficiently pleaded. Additionally, Plaintiff has not presented arguments or evidence relating to these claims in opposition to Nucor's motion for summary judgment. Plaintiff's complaint is therefore construed as asserting only the claims listed above.

alleges that he was subjected to retaliation and ultimately fired because he "refused to engage in activity with [his supervisor] regarding homosexual pictures." *Id.*

This matter is before the court on a motion for summary judgment filed by Nucor on April 22, 2011. ECF No. 52. Plaintiff filed a response in opposition to Nucor's motion on May 10, 2011. ECF No. 55. Nucor filed a reply on May 20, 2011. ECF No. 57. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the within action was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On December 15, 2011, the Magistrate Judge issued a Report and Recommendation in which she recommended that Nucor's motion for summary judgment be granted. ECF No. 69. Plaintiff filed objections to the Report and Recommendation on January 3, 2012. ECF No. 70. Nucor filed a response on January 20, 2012. ECF No. 71.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## **FACTS**

The following facts are either undisputed or taken in the light most favorable to Plaintiff, to the extent they are supported by evidence in the record. Plaintiff was hired as a welder for Nucor on June 19, 2005 and was terminated on August 13, 2008. ECF No. 52-2 & 52-7. During

this time, Plaintiff received eleven warnings or consultations concerning the poor quality of his welds. ECF No. 52-5. Plaintiff also received "Performance / Progress Reviews" in June 2006, June 2007, and June 2008. *Id.* at 6-8, 13-15 & 18-20. Plaintiff's June 2006 review was mostly positive, noting that he had "some quality issues[,] missed welds and poor weld quality" and that he "needs to improve on being as productive as possible." *Id.* at 6-8. Plaintiff's June 2007 review was less positive, noting further problems with work quality and productivity as well as problems with safety. *Id.* at 13-15. Plaintiff's June 2008 review once again described problems with work quality, productivity, and safety, stating that Plaintiff needed improvement in several areas. *Id.* at 18-20. The 2006 and 2008 reviews stated that overall, Plaintiff was meeting expectations in all or most areas.[2] On July 11, 2008, Plaintiff was given a "zero tolerance" warning regarding his weld quality. ECF No. 52-6. The warning stated that Plaintiff had "been given many opportunities to improve his unacceptable welding performance over the years" and warned that any further problems with weld quality would result in immediate termination of employment. *Id.* at 2. On August 13, 2008, Nucor sent Plaintiff a letter notifying him that his employment had been terminated "for repeated poor work performance concerning quality." ECF No. 52-8.

Plaintiff states that around December 2007, his supervisor, John Hutto ("Hutto"), a white man, began to harass welders by finding fault with their work. Plaintiff states that the welders

---

[2] The 2007 review rates Plaintiff's overall performance as "M/I," which presumably indicates an assessment between "meets expectations in all or most areas" and "improvement is needed in some important areas." ECF No. 52-5 at 13.

were predominately black.[3] Plaintiff states that Hutto "found fault with all that he did" and accused him of having poor weld quality. ECF No. 55 at 5-6. Plaintiff also states that a white welder supervised by Hutto, Kevin O'Neal ("O'Neal"), was treated better than Plaintiff despite having a similar problems with poor weld quality and safety. *Id.* at 5. In his 2010 deposition, Hutto testified that on one occasion he told Plaintiff that Plaintiff had fourteen absences although he had recently told Plaintiff that he had only ten absences. ECF No. 56-2 at 10. Hutto testified that he had made a mistake with the earlier count because he had forgotten to include Plaintiff's 2005 absences. *Id.* Hutto also testified that O'Neal was "a pretty good welder" and that he did not have problems with O'Neal's weld quality or safety. *Id.* at 17. Glenn Wilber ("Wilber"), a Production Manager for Nucor, stated in an affidavit that since 1996, at least three white welders have been terminated for work performance issues. ECF No. 52-3 at 5. Plaintiff testified that on one occasion Hutto told him that it was "just a matter of time" before Plaintiff was fired. ECF No. 52-9 at 5-6.

Plaintiff states that Hutto never recommended him for transfer to a position as a fitter despite his interest in the position. ECF No. 55 at 4-5. Plaintiff states that the fitters were predominately white,[4] and that only white welders were encouraged to become fitters. Hutto testified that he recommended Bradford Steele ("Steele"), a white welder, for transfer to a fitter position because Steele "was the only one that showed any interest in" the position at that time. ECF No. 56-2 at 11. Bryant Nelson ("Nelson"), a black man, testified that he started working for

---

[3] A list of twenty Nucor welders submitted by Plaintiff shows ten black employees, nine white employees, and one Hispanic employee. ECF No. 56-4 at 1.

[4] A list of twenty-one Nucor fitters submitted by Plaintiff shows four black employees, sixteen white employees, and one Hispanic employee. ECF No. 56-4 at 2.

4

Nucor as a fitter but was forced to become a welder after two weeks because Hutto felt that he was not capable of doing the fitter job. ECF No. 67-2 at 3-4. Wade Williamson ("Williamson"), a white man, testified that Nelson was encouraged to become a fitter when he started working for Nucor. ECF No. 67-1 at 12. Williamson also testified that frequently "the black guys would rather weld and the white guys would rather fit," but that "everybody actually encouraged people to come over and learn how to fit." *Id.* at 11-12. After Plaintiff was hired as a welder for Nucor, he never applied for a fitter job or any other job at Nucor. ECF No. 52-9 at 29. Glenn Wilber stated in an affidavit that because Plaintiff was not in "good standing" due to his attendance problems, he would have been ineligible to bid on the fitter position. ECF No. 52-3 at 4. Wilber further stated that Plaintiff would not have met the minimum qualifications for the position because he lacked a requisite pipe welding certification. *Id.*

Wade Williamson testified that he rode to work with black employees and that his time working under John Hutto was "an absolute nightmare." ECF No. 67-1 at 8. Williamson explained that Hutto made it very difficult for Williamson and some other employees to transfer to another mill after one year of employment even though they were told upon hiring that this would be possible. *Id.* Williamson further explained that Hutto once wrote an evaluation opining that Williamson needed to be more self-motivated and to take responsibility for his mistakes, which Williamson felt was unfair and unjustified. *Id.* at 10.

Williamson testified that when he was working as a fitter, the fitters would sometimes meet in Hutto's office as a group. ECF No. 67-1 at 12. Williamson testified that Hutto once

stated that "the welders couldn't think for themselves."[5]  *Id.*  Williamson also testified that on one occasion when a black employee stated that he was moving to Memphis, Hutto remarked that the employee needed to watch the movie "Mississippi Burning" before moving there.[6]  *Id.* at 14.  Williamson testified that he never witnessed Hutto making any kind of racial remark.  *Id.* at 13.

Plaintiff also states that Hutto created a hostile work environment for him by showing him homosexual pictures and following him into the restroom.  ECF No. 55 at 8-9.  On one occasion Hutto showed various employees, including Plaintiff, a picture on the computer in Hutto's office.  ECF No. 67-1 at 18.  The picture initially appeared to be an attractive woman in a bikini holding a bottle of wine.  *Id.*; ECF No. 52-9 at 3.  Hutto asked Plaintiff "what would you do with something like this here."  ECF No. 52-9 at 3.  Upon scrolling down the picture, the person in the picture was revealed to be a man.  ECF No. 67-1 at 18.  Additionally, on one occasion Hutto suspected that Plaintiff was sleeping in the bathroom and started hitting or kicking the bathroom door.  *Id.* at 17.  Plaintiff also states that Hutto would make "sexual advances" toward him, such as "giving [him] the eyes and all kind of stuff" and shaking his hand with a "soft handshake" that was "like a woman."  ECF No. 52-9 at 7-8, 49 & 51.

## **STANDARD OF REVIEW**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall

---

[5] The portion of Williamson's deposition in which he explains the context of this remark was not included in Plaintiff's filings.

[6] The court takes judicial notice of the fact that "Mississippi Burning" is a work of fiction based on the actual events surrounding the FBI investigation into the 1964 murders of three civil rights workers in Mississippi.

6

be granted when a moving party has shown "[that] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*

## DISCUSSION

**I.   Race Discrimination**

   **A.   Discriminatory Discharge**

A plaintiff may demonstrate discrimination using direct or circumstantial evidence. Absent direct evidence, a plaintiff alleging that his employment was terminated for discriminatory reasons must establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) his employment was terminated; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the termination; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005). Once a plaintiff establishes a prima facie case of discrimination, "the burden of production then shifts to

7

the employer to articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If the employer carries this burden, the plaintiff must then "prove by a preponderance of the evidence that the neutral reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id.* (quotation omitted). In other words, the plaintiff must ultimately prove that he was the victim of intentional discrimination. *Id.*

### 1. The Magistrate Judge's Report and Recommendation

The Magistrate Judge found that Plaintiff could not demonstrate that he was meeting Nucor's legitimate expectations at the time of his termination. ECF No. 69 at 7. The Magistrate Judge noted the numerous problems with work quality documented in Plaintiff's personnel file as well as the final warning informing Plaintiff that he would be terminated for any further unsatisfactory welds. *Id.* at 7-8. The Magistrate Judge recognized that Plaintiff "denies that he was responsible for all of the inferior welds for which he was blamed," but noted that it is the employer's perception that matters in determining whether given reasons are a pretext for discrimination. *Id.* at 8-9 (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 518 (4th Cir. 2006); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003)). That is, unless the employer's expectations are a "sham designed to hide the employer's discriminatory purpose" and therefore not "legitimate," it does not matter whether the employer is reasonable or correct in its belief that the employee is not meeting these expectations. *Id.* at 9.

### 2. Plaintiff's Objections

Plaintiff objects that the Report and Recommendation is "contradictory with respect to [his] disparate treatment claim." ECF No. 70 at 7. As Plaintiff notes, the Magistrate Judge

stated in her analysis of Plaintiff's hostile work environment claim that "many of [Plaintiff's] alleged incidents, taken as true, may indicate disparate treatment of African Americans generally but do not as a matter of law support a hostile work environment claim." ECF No. 69 at 13 (citing *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004) (holding that complaints of a "general culture . . . that tolerates discrimination," rather than racially offensive conduct directed at the plaintiff himself, did not establish a hostile work environment)). However, contrary to Plaintiff's assertion, the Magistrate Judge did not suggest that "Plaintiff could establish a disparate treatment claim with the evidence" he has provided. ECF No. 70 at 7. Plaintiff's disparate treatment claim cannot succeed based on a showing of "disparate treatment of African Americans generally" at Nucor – Plaintiff must show that he was fired, or not promoted, because of his race.

Plaintiff challenges the Magistrate Judge's finding that he was not meeting his employer's expectations and contends that the Magistrate Judge failed to address his allegations that his "performance issues" were fabricated. ECF No. 70 at 8. Plaintiff identifies evidence in the record that, according to him, "rebut[s] the evidence of poor work performance by challenging whether or not the poor welds were all attributable to [him]."[7] *Id.* at 9. Plaintiff contends that "pretext can be proven by demonstrating that the non[-]discriminatory reason for discharge is false" because "a trier of fact can reasonably infer that a defendant is covering up a discriminatory purpose with false explanations." *Id.* at 9-10. As the Magistrate Judge explained,

---

[7] Plaintiff refers to Wade Williamson's statement that the stamp system used to identify the welder who worked on a specific job was not always properly followed, as well as Bryant Nelson's statement that he (Nelson) would sign disciplinary forms even if he did not agree that he had done anything wrong. ECF No. 70 at 9.

it does not matter whether Nucor was correct or reasonable in blaming Plaintiff for the welding problems as long as the Nucor decision makers genuinely believed that Plaintiff was responsible.

The court first finds that the evidence offered by Plaintiff could not lead any rational fact-finder to conclude that Nucor's stated reasons for terminating Plaintiff's employment are false. Furthermore, even if the evidence offered by Plaintiff could demonstrate that he was not responsible for some or all of the welding problems attributed to him, it does not suggest in any way that Hutto or other decision makers would have been aware of this. Plaintiff has introduced no evidence showing that Hutto or any other decision maker knew or believed any of the complaints about Plaintiff's work quality to be false. In the absence of such evidence, a rational fact-finder could not conclude that their stated reasons for Plaintiff's termination were a pretext for discrimination. Plaintiff's objections are without merit.

### B. Discriminatory Failure to Promote

A plaintiff alleging that he was treated less favorably in promotions because of his race must establish a prima facie case by showing that "(1) [he] is a member of a protected group, (2) [he] applied for the position in question, (3) [he] was qualified for that position, and (4) the defendants rejected [his] application under circumstances that give rise to an inference of unlawful discrimination." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Once a plaintiff establishes a prima facie case of discrimination, "the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the decision not to promote." *Id.* (quotation omitted). If the employer provides such a reason, the plaintiff must prove that this reason is a pretext for discrimination. *Id.*

The Magistrate Judge found, based on unrefuted facts in the record, that Plaintiff had not

applied for the fitter job and was not qualified for the job because he did not have the necessary welding certifications. ECF No. 69 at 10. In his objections, Plaintiff repeats his arguments concerning "[t]he disparate treatment committed by John Hutto toward welders and fitters" and his allegation that only white welders were encouraged to become fitters. ECF No. 70 at 8. However, Plaintiff does not dispute the Magistrate Judge's findings that Plaintiff never applied to be a fitter and was not qualified to be a fitter. Plaintiff's objection is therefore without merit.

## II. Hostile Work Environment

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (quotation omitted). A plaintiff asserting a claim based on a hostile work environment must show that "(1) he experienced unwelcome harassment; (2) the harassment was based on his race, color, religion, national origin, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006).

To show that harassment was "based on" one of the protected traits listed above, a plaintiff must demonstrate that but for that trait he would not have been subjected to the harassment. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Additionally, harassment is "severe or pervasive" only if it "creat[es] an abusive atmosphere" that is "pervaded with

discriminatory conduct aimed to humiliate, ridicule, or intimidate." *Sunbelt*, 521 F.3d at 316 (quotation omitted).  Even "incidents that would objectively give rise to bruised or wounded feelings" are not actionable under Title VII if they are based on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor." *Id.* at 315-16 (quotations omitted).

Title VII encompasses claims of a hostile work environment caused by sexual harassment by persons of the same sex as the plaintiff.  *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 79-80 (1998).  However, such a plaintiff must prove that he was harassed because of his sex. *Id.* at 81.  This causation element is "an especially formidable obstacle in same-sex harassment cases." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 260 (4th Cir. 2001).  The Supreme Court has identified three situations that may support an inference of same-sex sexual harassment: (1) if the plaintiff presents "credible evidence that the harasser was homosexual" and made "explicit or implicit proposals of sexual activity"; (2) if the plaintiff shows that "the harasser [was] motivated by general hostility to the presence of [members of the same sex] in the workplace"; or (3) if the plaintiff offers "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Oncale*, 523 U.S. at 80-81.

### A. The Magistrate Judge's Report and Recommendation

The Magistrate Judge found that Plaintiff could not demonstrate that any alleged harassment was based on race or sufficiently severe and pervasive so as to create an abusive working environment.  ECF No. 69 at 12.  The Magistrate Judge found that "the incidents that could arguably be considered to support a hostile work environment claim are insufficient as a matter of law to establish that any alleged harassment was severe and pervasive, as they are

sporadic and isolated, and, in any event, do not appear to be overtly offensive based on race." *Id.* at 13. The Magistrate Judge also found that Plaintiff's allegations are "insufficient as a matter of law to establish a claim of same-sex harassment." *Id.* at 15. The Magistrate Judge noted that although Plaintiff appears to rely to the first scenario identified in *Oncale*, Plaintiff has not provided evidence that Hutto is homosexual or that Hutto implicitly or explicitly proposed sexual activity. *Id.*

### B. Plaintiff's Objections

Plaintiff objects that the Magistrate Judge improperly weighed the evidence, and that based on the evidence a reasonable jury could find that racially offensive comments and sexual harassment created a hostile work environment. ECF No. 70 at 5-6. Concerning racially offensive comments, Plaintiff contends that the Magistrate Judge failed to address the evidence that Hutto told a black employee that he should see the movie "Mississippi Burning" before moving to Memphis and that Hutto stated that the welders could not think for themselves. *Id.* Although Plaintiff repeatedly asserts that the welders are "predominately black," the list provided by Plaintiff shows that half of the welders are black, with the other half being either white or Hispanic. ECF No. 56-4 at 1. Furthermore, Plaintiff provides no evidence that Hutto's comment that "welders could not think for themselves" was a racially motivated slur rather than a supervisor's expression of frustration with his employees. Similarly, the court finds that Hutto's comment about "Mississippi Burning" cannot be reasonably interpreted as a racial slur. Furthermore, because the comment was not directed at Plaintiff or stated in his presence, it is unlikely that it could have contributed to a "severe or pervasive" atmosphere of harassment toward Plaintiff.

13

With regard to his sexual harassment allegations, Plaintiff argues that the court should consider whether there were "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." ECF No. 70 at 6 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). Assuming Plaintiff has shown that Hutto subjected him to unwelcome "verbal or physical conduct of a sexual nature," Plaintiff has not shown that he was subjected to this conduct because of his sex or that the conduct was sufficiently severe or pervasive to create a hostile work environment. Based on the evidence in the record, no rational fact-finder could conclude that Plaintiff was subjected to severe or pervasive harassment based on his race or sex. Plaintiff's objections are therefore without merit.

### III. Retaliation

Title VII prohibits an employer from discriminating or retaliating against an employee because he has "opposed any practice made an unlawful employment practice" under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *See* 42 U.S.C. § 2000e-3(a). A plaintiff alleging retaliation must prove that "(1) [he] engaged in a protected activity; (2) the employer acted adversely against h[im]; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

The Magistrate Judge found that "the record indisputably shows that [Plaintiff] did not engage in any protected activity within the meaning of Title VII." ECF No. 69 at 16. The Magistrate Judge noted that Plaintiff does not contest that he never made a report of

discrimination, harassment, or retaliation until after his termination and never expressed to Hutto that he disagreed with Hutto's actions. *Id.* The Magistrate Judge stated that Plaintiff's claim of retaliation for refusing to participate in Hutto's alleged sexual advances is "merely an unsuccessful attempt to characterize alleged continued harassment as a Title VII retaliation claim rather than a hostile work environment claim." *Id.* Although Plaintiff argues in his objections that "his opposition resulted in retaliation" leading to his termination, he does not dispute the Magistrate Judge's findings. Accordingly, Plaintiff's objection is without merit.

### IV. South Carolina Human Affairs Law

Although Plaintiff included a claim under the Human Affairs Law in his complaint, he made no reference to this claim in his opposition to Nucor's motion for summary judgment. The Magistrate Judge noted that "[t]he South Carolina Human Affairs Law essentially follows the substantive structure of Title VII" and that "Title VII cases which interpret provisions or procedures essentially identical to those of the Human Affairs Law are certainly persuasive if not controlling in construing the Human Affairs Law." ECF No. 69 at 6 n.5 (quoting *Orr v. Clyburn*, 290 S.E.2d 804, 806 (S.C. 1982)). Based on the same analysis provided for Plaintiff's Title VII claims, the Magistrate Judge found that Nucor was entitled to summary judgment on Plaintiff's Human Affairs Law claim. *Id.* Plaintiff does not object to this finding, and the court holds that it is not clearly erroneous. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### CONCLUSION

After a de novo review of the record in this case, the court determines that Plaintiff's objections to the Report and Recommendation are without merit. Accordingly, the court adopts

Magistrate Judge Gossett's Report and Recommendation and incorporates it herein. Nucor's motion for summary judgment is granted.

**IT IS SO ORDERED**.

s/ Margaret B. Seymour  
Margaret B. Seymour  
Chief United States District Judge

Columbia, South Carolina

February 29, 2012.